**\*NOT FOR PUBLICATION**

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| | : | |
| RASHIED K. GOODWIN, | : | |
| | : | |
| Plaintiff | : | Civil Action No. 12-1040 (FLW) |
| | : | |
| v. | : | |
| | : | **OPINION** |
| | : | |
| STATE OF NEW JERSEY, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| | : | |
| | : | |

**WOLFSON, United States District Judge:**

Presently before the Court is Defendants' Detective Edward Conway ("Conway"), Detective C. Lissner ("Lissner"), and Detective Sidorski ("Sidorski") [1] (collectively, "Defendants") unopposed motion for summary judgment on the Amended Complaint filed by *pro se* Plaintiff Rashied K. Goodwin ("Plaintiff"). In the Amended Complaint, Plaintiff asserts that Defendants violated his civil rights, under 42 U.S.C. §§ 1983 and 1985, as well as based upon supervisory liability, because they accused Plaintiff of committing a crime that he did not commit, and for which Plaintiff was incorrectly incarcerated as a result thereof. Defendants move for summary judgment on the Amended Complaint, arguing that: (i) Defendants are entitled to Eleventh Amendment immunity; (ii) Defendants are not amendable to suit under §§ 1983 and 1985 because they are not "persons" within the meaning of those statutes; (iii) Plaintiff has failed to

---

[1]     Defendants' Answer provides that the Amended Complaint improperly identifies this Defendant as "Syrdoski."

establish a *prima facie* case of malicious prosecution or false arrest; (iv) Defendants are entitled to qualified immunity; (v) Plaintiff's false arrest claim is untimely; and (vi) Plaintiff failed to file a timely notice of tort claim.  For the reasons that follow, the Court denies without prejudice Defendants' unopposed motion for summary judgment.

**BACKGROUND**

The following facts are drawn from Defendants' L. Civ. Rule 56.1 statement of undisputed material facts submitted in conjunction with Defendants' motion for summary judgment and supported by attached materials.  Plaintiff has not opposed Defendants' facts or materials despite ample time set forth in the Magistrate Judge's scheduling order.  Accordingly, I will deem Defendants' facts to be admitted.  *See* L. Civ. Rule 56.1(a) ("any material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion").  Nevertheless, I will view these facts in the light most favorable to Plaintiff.  *See Pollock v. American Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986).

On September 26, 2009, Plainfield Police Department officers arrested Plaintiff based upon information received by the Somerset County Organized Crime and Narcotics Task Force ("Task Force") from a confidential informant ("CI").  Def. Facts, ¶¶ 1, 4.  Plaintiff was incarcerated and detained from September 26 though October 1, 2009.  *Id.* at ¶¶ 2-3.  Plaintiff's booking sheet for this arrest lists Plaintiff's alias as "Snipe."  *Id.* at ¶ 1.

Notwithstanding these facts, around the same time that Plaintiff was arrested, and while incarcerated, the Task Force was operating on information that an individual known as "Snipe" was selling heroin in the Watchung and North Plainfield area.  *Id.* at ¶

4.  Based on this information, the Task Force arranged with its CI to purchase heroin from Snipe during the week of September 27, 2009.  *Id.* at ¶ 5.  Task Force members Lissner and Conway proceeded to Watchung at some point during this week to meet with the CI; Lissner, acting undercover, joined the CI in meeting with Snipe.  *Id.* at ¶¶ 6-7. When Lissner and the CI met with Snipe, Lissner exchanged phone numbers with Snipe, and Snipe sold heroin to the CI.  *Id.* at ¶¶ 8-10.  No arrest was made at this time.

On October 5, 2009, Lissner called Snipe to arrange for a heroin purchase.  *Id.* at ¶ 11.  Although Snipe initially agreed to meet at 2:30pm that same day, Lissner was unable to contact Snipe to confirm their meeting.  *Id.* at ¶¶ 11-12.  However, on October 15, 2009, Snipe phoned Lissner to "make arrangements to meet and do business."  *Id.* at ¶ 13.  Lissner and Snipe then exchanged text messages and planned to meet on October 16, 2009, in a parking lot in Watchung, for Lissner to purchase heroin from Snipe.  *Id.* at ¶¶ 14-16.  Prior to the meeting, Sidorski set up surveillance of the parking lot; Lissner arrived to meet Snipe, who entered Lissner's vehicle.  *Id.* at ¶¶ 17-18.  Snipe then handed Lissner several bags of heroin, for which Lissner paid Snipe sixty dollars.  *Id.* at ¶¶ 20-21.  No arrest was made at this time either.

As a result of these interactions with Snipe, the Task Force concluded that Snipe resided in or around Plainfield, New Jersey, and accordingly contacted the Plainfield Police Department for their assistance in identifying Snipe.  *Id.* at ¶¶ 22-23.  The Plainfield Police Department informed the Task Force that Snipe might be an alias for Plaintiff, and provided Conway, another member of the Task Force with a digital photograph of Plaintiff.  *Id.* at ¶¶ 24-25.  After reviewing the photograph, Lissner confirmed that Plaintiff and Snipe were the same individual.  *Id.* at ¶¶ 26-27.  Based on

this identification, Conway prepared an affidavit of probable cause on November 13, 2009, which stated, in relevant part: "On October 16, 2009, an undercover detective met with [Plaintiff] . . . in Watchung, New Jersey . . . and purchased . . . heroin from [Plaintiff] in exchange for a sum of U.S. Currency."  *Id.* at ¶ 28 (quoting Def. App'x, 32 (Affidavit in Support of Probable Cause)).  Pursuant to the affidavit, an arrest warrant for Plaintiff was issued on November 25, 2009, and on the same date Plaintiff was arrested.[2]  *Id.* at ¶ 29.  A grand jury later returned a two-count indictment against Plaintiff based on Snipe's sale of heroin to the Task Force on October 16, 2009.  *See id.* at ¶ 30.

Several months later, during pretrial practice, Plaintiff's public defender wrote a letter to the prosecutor in charge of Plaintiff's case, alerting the prosecutor that Plaintiff had an alibi for the first alleged sale between Snipe and the CI during the week of September 27, 2009, and requesting further discovery in that regard, including the exact date of that sale.  *Id.* at ¶ 31; Def. App'x, 68.  The prosecutor rejected defense counsel's request for discovery related to the sale to the CI, explaining that Plaintiff had been indicted for a sale of heroin to the Task Force on October 16, 2009, and, for that reason, it was the prosecutor's position that Plaintiff was not entitled to know the exact date of the other sale to the CI.[3]  Def. Facts, ¶ 32.  Notwithstanding the foregoing, defense counsel filed a Notice of Alibi on behalf of Plaintiff.  *Id.* at ¶ 34.

In subsequent correspondence, the prosecutor acknowledged that Plaintiff had been incarcerated from September 26 to October 1, 2009, but reasoned that because the week of September 27 extended through October 3, Plaintiff's alibi did not preclude him

---

[2]      Probable cause was also found to support the criminal complaint issued against Plaintiff.  *See* Def. Facts, ¶ 29 (citing Def. App'x, 80).
[3]      The prosecutor also rejected defense counsel's discovery request in order to protect the identity and safety of the CI.  Def. Facts, ¶ 32.

from possibly meeting with the CI to sell heroin after Plaintiff had been released from his incarceration.  *See id.* at ¶ 34.  Defense counsel responded by asserting that, based on the prosecutor's concession that Plaintiff had been incarcerated for most of the week of September 27, the alleged sale between Snipe and the CI necessarily must have occurred on October 3, 2009, and accordingly requested discovery of police records indicating the same.  *See id.* at ¶ 35.  The prosecutor again rejected defense counsel's request, relying solely on the fact that "the investigator who conducted the sale is confident that it took place during the time when [Plaintiff] was not in custody," and reiterating that, in the interest of confidentiality, the prosecutor was unwilling to release information that could reveal the identity of the CI.  *See id.* at ¶ 36.

Ultimately, in light of the foregoing, and following a motion by the prosecutor, the state court judge entered an order dismissing the indictment against Plaintiff on July 2, 2010.  On February 22, 2012, Plaintiff filed his first Complaint, and on March 13, 2012, Plaintiff filed his Amended Complaint asserting claims for deprivation of his constitutional rights against several state defendants; pursuant to its initial screening obligations under 28 U.S.C. § 1915(e)(2)(B), this Court dismissed Plaintiff's claims against the State of New Jersey and the Somerset County Prosecutor's Office.  *See* Dkt. No. 8.  Defendants now move for summary judgment on Plaintiff's claims.

**STANDARD OF REVIEW**

A moving party is entitled to judgment as a matter of law where there is no genuine issue as to any material fact.  *See* Fed R. Civ. P. 56(c); *Brooks v. Kyler*, 204 F.3d 102, 105 n.5 (3d Cir. 2000) (citing Fed R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)); *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1366 (3d Cir.

1996).  The burden of demonstrating the absence of a genuine issue of material fact falls

on the moving party.  *See Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 305 (3d Cir.

1999).  Once the moving party has satisfied this initial burden, the opposing party must

identify "specific facts which demonstrate that there exists a genuine issue for trial."

*Orson*, 79 F.3d at 1366.

Not every issue of fact will be sufficient to defeat a motion for summary

judgment; issues of fact are genuine "if the evidence is such that a reasonable jury could

return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248 (1986).  Further, the nonmoving party cannot rest upon mere allegations; he

must present actual evidence that creates a genuine issue of material fact.  *See* Fed R.

Civ. P. 56(e); *Anderson*, 477 U.S. at 249 (citing *First Nat'l Bank v. Cities Serv. Co.*, 391

U.S. 253, 290 (1968)).  In conducting a review of the facts, the non-moving party is

entitled to all reasonable inferences and the record is construed in the light most favorable

to that party.  *See Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d at 864.  Accordingly, it

is not the Court's role to make findings of fact, but to analyze the facts presented and

determine if a reasonable jury could return a verdict for the nonmoving party.  *See*

*Brooks*, 204 F.3d at 105 n.5 (citing *Anderson*, 477 U.S. at 249); *Big Apple BMW v. BMW*

*of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

Lastly, where, as here, the motion is unopposed, summary judgment may only be

granted if record evidence supports the moving party's affirmative claim(s).  *Anchorage*

*Assocs. v. V.I. Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990) ("Where the moving

party has the burden of proof on the relevant issues, this means that the district court must

6

determine that the facts specified in or in connection with the motion entitle the moving party to judgment as a matter of law.").

**DISCUSSION**

Plaintiffs' Amended Complaint asserts violations of his civil rights, pursuant to 42 U.S.C. §§ 1983 and 1985, against Defendants based on their misidentification of Plaintiff related to certain heroin sales.  Specifically, Plaintiff claims that Defendants incorrectly concluded that Plaintiff was the individual involved in two heroin sales orchestrated by the Task Force in 2009, and that based on their misidentification, Plaintiff was wrongly incarcerated for six months until the state court judge ordered that Plaintiff's indictment be dismissed.  The Court construes Plaintiff's claims against Defendants as claims for false arrest, false imprisonment, and/or malicious prosecution.  In that connection, I note that Plaintiff does not specify in the Amended Complaint whether his claims are asserted against the Defendants in their official or individual capacities.  Because I must construe a *pro se* plaintiff's complaint liberally, I analyze Plaintiffs' claims as if they are brought against Defendants individually and in their official capacity as Police Detectives. Defendants move for summary judgment on Plaintiff's claims, arguing that: (i) Defendants are entitled to Eleventh Amendment immunity; (ii) Defendants are not "persons" within the meaning of §§ 1983 and 1985; (iii) Plaintiff's Amended Complaint fails to establish a *prima facie* case of malicious prosecution of false arrest; (v) Plaintiff's claims are untimely; (vi) Plaintiff failed to timely file a notice of tort claim; and (vii) Defendants are entitled to qualified immunity.[4]

_____

[4] Defendants also argue that Plaintiff's Amended Complaint should be dismissed because Defendants are not "persons" under the New Jersey Civil Rights Act ("NJCRA").  Nowhere in Plaintiff's Complaint or Amended Complaint does Plaintiff

As an initial matter, the Court must address whether sovereign immunity bars Plaintiffs' claims against Defendants.  The Eleventh Amendment bars federal court suits for money damages against state officers in their official capacities.  *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985).  Here, Defendants argue, without any factual basis, that they are immune under the Eleventh Amendment.  Defendants do not provide any facts or argument that they are state officers, or otherwise an arm of the state.[5]  Simply because Defendants may have been acting under color of state law does not necessarily entitle them to Eleventh Amendment immunity.  *See Carter v. City of Philadelphia*, 181 F.3d 339, 350-51 (3d Cir. 1999).  As Defendants have the burden of proving that sovereign immunity applies, *Christy v. Pa. Turnpike Comm'n*, 54 F.3d 1140, 1144 (3d Cir. 1995), which burden they have not met, I cannot conclude that Plaintiff's claims are not barred under the Eleventh Amendment.[6]

With respect to the timeliness of Plaintiff's claims against Defendants, the Court notes that, in dismissing certain of Plaintiff's claims *sua sponte* pursuant to 28 U.S.C. § 1915(e)(2)(B), no ruling was made regarding whether Plaintiff had timely filed his Complaint because neither the Complaint nor the Amended Complaint provided the dates of Plaintiff's arrest, incarceration, or arraignment.  Nevertheless, I noted that New

---

identify the NJCRA as a basis for his claims, and thus the Court need not address this argument.

[5]    At most, Defendants refer to themselves in their brief accompanying their motion for summary judgment as "State Defendants" without any further explanation, and rely on case law suggesting that county prosecutors are entitled to Eleventh Amendment immunity.  These conclusory and irrelevant arguments concerning whether Defendants' are entitled to Eleventh Amendment immunity—in their apparent capacity of local police officers—is insufficient for Defendants to meet their burden of establishing that sovereign immunity applies.

[6]    For this reason, I do not reach Defendants' argument that, as "state officials," they are not "persons" under §§ 1983 and 1985.

Jersey's two-year limitations period on personal injury actions, N.J.S.A. 2A:14–2, applies to civil rights claims under §§ 1983 and 1985, *Cito v. Bridgewater Township Police Dep't*, 892 F.2d 23, 25 (3d Cir. 1989), and thus, Plaintiff's claims could potentially be time barred.

A claim of false arrest, and the accompanying claim for false imprisonment, begins to accrue immediately upon the arrest at issue. *Wallace v. Kato*, 549 U.S. 384, 389-90 & n.3 (2007); *Singleton v. DA Philadelphia*, 411 F. App'x 470, 472 (3d Cir. 2011) (ruling that accrual of a claim for false arrest occurred on the date that the plaintiff "was arrested and charges were filed against him"); *Alexander v. Fletcher*, 367 F. App'x 289, 290-91 (3d Cir. 2010) (affirming the district court's conclusion that a § 1983 false arrest claim began to accrue on the date of arrest). Significantly, however, although the claim accrues upon arrest, the statute of limitations does not begin to run at the same time. As the Supreme Court has explained, "[t]he running of the statute of limitations on false [arrest and] imprisonment is subject to a distinctive rule . . . [.] Limitations begin to run against an action for false imprisonment *when the alleged false imprisonment ends*." *Wallace*, 549 U.S. at 389 (emphasis added; internal quotation marks omitted). In that connection, "a false imprisonment ends once the victim becomes held pursuant to such [legal] process—when, for example, he is bound over by a magistrate or arraigned on charges. . . ." *Id.* at 389-90 (citations omitted). Put differently, the statute of limitations for a false arrest/imprisonment claim begins to run "*when the individual is released, or becomes held pursuant to legal process*," *i.e.*, is arraigned. *Alexander v. Fletcher*, 367 F. App'x at 290 n.2 (citing *Wallace*, *supra*; emphasis added). As with other civil rights claims, under New Jersey law, the statute of limitations for a false arrest/imprisonment

9

claims is two years.  *Fleming v. United Parcel Serv., Inc.*, 255 N.J. Super. 108, 154-55 (Super. Ct. Law Div. 1992).[7]  Thus, for the purposes of Plaintiff's false arrest and imprisonment claims against Defendants, I must determine when Plaintiff was released from the arrest effected by Defendants, or first held pursuant to legal process, *i.e.*, arraigned or bound by a magistrate, following his arrest by Defendants.

In connection with their motion for summary judgment, Defendants have submitted records showing that Plaintiff was arrested on November 9, 2009 for the alleged October 16, 2009 sale of heroin to the Task Force.  Beyond that, Defendants have not submitted any document showing the date that Plaintiff was arraigned on the charges in the indictment, or showing when Plaintiff was released from Defendants' custody. Indeed, Defendants have not even shown the date that Plaintiff was indicted on the drug charges for which he was incarcerated.  Although Defendants did supply a copy of the indictment, there is no readily apparent date.[8]  Because I must draw inferences in the light most favorable to Plaintiff, I cannot conclude that Plaintiff was indicted, let alone arraigned, on or before February 22, 2010—two years prior to the date Plaintiff filed his original Complaint.  *Cf. Alexander v. Fletcher*, 367 F. App'x  at 290 n.2 (taking judicial notice of criminal record indicating date of arraignment for purposes of calculating statute of limitations period).  The absence of any fact in the record currently before me

---

[7]     Notably, Plaintiff's imprisonment does not toll the running of the statute of limitations.  *See Alexander*, 367 F. App'x at 290-91 & n.2; *see also Hughes v. Smith*, 264 F. Supp. 767, 769 (D.N.J. 1967), *aff'd*, 389 F.2d 42 (3d Cir. 1968).  Thus, the July 2, 2010 date when Plaintiff's charges were dismissed does not start the running of his statute of limitations in this case.  Rather, as noted above, the pertinent date is when Plaintiff was released from Defendants' custody, arraigned, or otherwise became held pursuant to "legal process."
[8]     If anything, the indictment appears to have been issued in 2010, as it contains a docketing number beginning in "10."

showing when Plaintiff was arraigned or released from Defendants' custody makes it inappropriate to conclude that Plaintiff failed to timely bring his false arrest/imprisonment claims against Defendants. Accordingly, Defendants' motion for summary judgment on that basis is denied.[9]

Lastly, Defendants argue that Plaintiff has failed to make out a *prima facie* claim for false arrest/imprisonment, and, in any event, Defendants are protected under the doctrine of qualified immunity. A claim for false arrest/imprisonment requires that (1) there was an arrest; and (2) the arrest was made without probable cause. *Dowling v. City of Philadelphia*, 855 F.2d 136, 141 (3d Cir. 1988).[10] The crux of Defendants' arguments is that the record clearly shows that Defendants had probable cause to arrest Plaintiff, including the affidavit of probable cause supporting arrest, the criminal complaint indicating that probable cause had been shown, and the grand jury indictment. Relying on this evidence, Defendants contend that summary judgment is proper because no reasonable jury could find that probable cause was lacking for Plaintiff's arrest, and that,

---

[9]   Defendants also move for summary judgment on "Plaintiff's failure to show that a notice of a claim was timely filed" pursuant to the New Jersey Tort Claims Act ("NJTCA"). As an initial matter, I note that Defendants are not arguing that Plaintiff *in fact* has not filed a notice of tort claim, only that it is not in the record. I am not convinced by Defendants' position that their summary judgment motion should be granted due to Plaintiff's failure to indicate whether a notice of tort claim had been filed. More importantly, the New Jersey Supreme Court has held that claims for violations of civil rights brought under § 1983 do not require compliance with the NJTCA. *Fuchilla v. Layman*, 109 N.J. 319, 537 A.2d 652 (1988); *see also* Harris v. Latamore, Civ No. 07-5299(JLL), 2008 WL 2937185, at *2 (D.N.J. July 29, 2008) ("[T]his Court finds that New Jersey has long recognized that § 1983 actions cannot be barred by the Tort Claims Act notice provision . . . ." (citing *Fuchilla*, *supra*)). Defendants do not address why Plaintiff should be required to file a notice of tort claim related to this § 1983 action; thus, I find this aspect of Defendants' motion to be meritless.

[10]   Similarly, a claim of malicious prosecution also requires, *inter alia*, a showing of the absence of probable cause to prosecute. *See Merkle v. Dublin Sch. Dist.*, 211 F.3d 782, 791-95 (3d Cir. 2000).

because the existence of probable cause is an absolute defense to a false arrest claim, *Herman v. City of Millville*, 66 F. App'x 363, 365 & n.3 (3d Cir. 2003), Plaintiff's claims against Defendants are meritless.

Defendants' argument is misplaced. The issue of probable cause is normally a question for the jury. *See Sharrar v. Felsing*, 128 F.3d 810, 817-18 (3d Cir. 1997), *abrogated on other grounds by Curley v. Klem*, 499 F.3d 199 (3d Cir. 2007). Although Defendants argue that the evidence submitted objectively shows that there was probable cause for Plaintiff's arrest, these documents only show that there was a warrant, complaint, and indictment. Defendants have not submitted anything showing why it was reasonable for them to believe that Plaintiff and Snipe were the same individual—for example, Defendants have not submitted the photograph of Plaintiff that the Plainfield Police Department supplied to the task force that Lissner relied on to identify Plaintiff as "Snipe," or any evidence supporting the Plainfield Police Department's conclusion that Plaintiff and Snipe were the same individual. *United States v. Glasser*, 750 F.2d 1197, 1206 (3d Cir. 1984), *cert. denied*, 471 U.S. 1018 (1985) (noting that probable cause is based on "whether the objective facts available to the officers at the time of arrest were sufficient to justify a reasonable belief that an offense [had been] committed."). Here, Defendants simply have not shown that there is insufficient evidence for a jury to make a finding that Defendants lacked probable cause to arrest Plaintiff; thus it would be inappropriate for the Court to make a ruling on the issue of probable cause. *Deary v. Three Un-Named Police Officers*, 746 F.2d 185, 192 (3d Cir. 1984). Indeed, the question of whether Defendants had a reasonable basis to arrest Plaintiff is the central disputed

fact in this matter, precluding an entry of summary judgment at this juncture.[11]  *See* Fed. R. Civ. P. 56(a).

In light of the foregoing, the Court denies Defendants' motion for summary judgment without prejudice.  Defendants may re-file their motion should they obtain additional evidence to support their arguments regarding the timeliness or merits of Plaintiff's claims.  Furthermore, given Plaintiff's failure to oppose Defendants' motion, and Plaintiff's apparent changes of address since the filing of his Amended Complaint, as noted on the docket, the Court directs Plaintiff to inform the Court within 20 days of this Opinion and accompanying Order whether Plaintiff in fact wishes to continue pursuing his claims against Defendants.

**CONCLUSION**

For the above stated reasons, Defendants' motion for summary judgment on Plaintiff's claims in the Amended Complaint is denied without prejudice.  Furthermore, Plaintiff is directed to inform the Court within 20 days whether Plaintiff is continuing to pursue his claims in the Amended Complaint against Defendants.

Dated: March 25, 2014                            /s/ Freda L. Wolfson
                                                 Hon. Freda L. Wolfson, U.S.D.J.

---

[11]   The same reasoning applies to Defendants' qualified immunity defense—the material dispute over probable cause is sufficient at this juncture to preclude the Court from ruling on whether Defendants are entitled to qualified immunity, as it is unlikely that it would be objectively reasonable for Defendants to arrest Plaintiff if they lacked probable cause. *See Anderson v. Creighton*, 483 U.S. 635, 638-41 (1987).